[No. 1330.]

## COUNTY OF EUREKA, RESPONDENT, *v.* COUNTY OF LANDER, APPELLANT.

COUNTIES—ESTABLISHMENT OF BOUNDARIES AND CORNERS.—In 1862 the county of Lander was created by legislative enactment which designated the fortieth meridian as its western boundary, and the eastern boundary of Humboldt county. In 1870, by virtue of law, and at the instance of the boards of county commissioners of Lander and Humboldt counties, the county surveyors of the two counties jointly established this boundary and subsequently established the northwest corner of Lander county. The results of these joint surveys were generally recognized and acquiesced in. When the legislature subsequently created Eureka county from the territory of Lander county, it designated the boundary between the two counties as a line running south from a point on the north boundary line of Lander county and equi-distant from the northwest and northeast corners of the latter county. In 1887 it was discovered that the Humboldt-Lander boundary of 1870 had been erroneously fixed one and one-half miles east of the fortieth meridian. *Held*, that Eureka county was created with reference to the fixity of the northwest corner of Lander county as then established, and that the intention of the legislature must be ascertained from the facts existing at the time it created Eureka county, and not from facts which arose afterwards.

APPEAL from the District Court of the State of Nevada, Ormsby county.

*Richard Rising*, District Judge.

The facts sufficiently appear in the opinion.

*W. D. Jones*, District Attorney of Lander county, *Trenmor Coffin* and *Henry Mayenbaum*, for Appellant.

I. The tax was paid to Lander county by authority of the legislature, and it cannot be recovered by Eureka county, unless by authority of the same power. It certainly will not be contended that the legislature's power and control over all the revenues of the counties is not unlimited. The courts have no jurisdiction over such matters. No matter what the consequences of the exercise of such legislative power may be, the courts must say, and have ever said: *Lex Scripta est.* (Welty's Law of Taxation, Sec. 51, p. 118; *Dubuque* v. *Chicago D. & M. Co.*, 47 Ia. 196; Cooley on Taxation, pp. 575, 168, 171; *Com. of Laramie Co.* v. *Com. of Albany Co.*, 92 U. S. 307; *People* v. *Alameda Co.*, 26 Cal. 650; 1 Desty's Taxation, 269; *Hess* v. *Pegg*, 7 Nev 30; *State* v. *Parkinson*, 5 Nev. 28; *Youngs* v. *Hall*, 9 Nev 212; *R. R. Co.* v. *Stockton City*, 41 Cal. 147; *Payne* v. *Treadwell*, 16 Cal. 233; *Pattison* v. *Yuba County*, 13 Cal. 175.

II. The Humboldt-Lander line and the Eureka-Lander line being established by the officers authorized by law are conclusive. The court cannot interfere. (2 Dillon's Mun. Corp. p. 825; *Gaines* v. *Thompson*, 7 Wall. 347; *United States* v. *Wright*, 11 Wall. 648; *Johnson* v. *Towsley*, 13 Wall. 72; *Somersel* v. *Town of Glastenbury*, 17 Atlantic, 748; Wells Res Adjudicata et Stare Decisis, p. 341; *Stanford* v. *Taylor*, 18 How. 409; *Jenkins* v. *Trager*, 40 Fed. 727; *United States* v. *Supulveda*, 1 Wall. 104; *Ellis* v. *Whan*, 91 Ill. 77; Abbott's Practice Ev. p 829; *Allen* v. *Blunt*, 3 Storey 742; *Bates* v. *Ill. C. R. Co.*, 1 Black. 204; *Lindsey* v. *Hawes*, 2 Black. 554; *United States* v. *Flint*, 4 Saw. 43; *Ringstorf* v. *Guth*, 50 Cal. 89; *San Diego City* v. *Allison*, 46 Cal. 168; *Gallagher* v. *Riley*, 49 Cal. 473; 1 Herman's Estoppel, p. 517; *Shaffer* v. *Weech*, 9 Pac. Rep. 205; *Mather* v. *Hood*, 8 Johns 45; 2 Phillip's Ev. 162; *Castro* v. *Hendricks*, 23 How. 438; *Hoole* v. *Kinkead*, 16 Nev. 222; *In re Palagano*, 38 Fed. 580; *White* v. *Spreckels*, 75 Cal. 610; *Fall* v. *Humboldt Co.*, 6 Nev. 103; *Howland* v. *Town of Springport*, 43 N. Y. 457.)

III. Edwards being authorized by law to establish the Eureka-Lander boundary line, his determination can not be collaterally attacked in this action. (Wells Res Adjudicata, pp. 233–342; Bigelow's Estoppel, 1 Ed. 144; *State ex rel. Hymer* v. *Nelson*, 32 N. Y. Rep. 5×9; 1 Desty's Taxation, 510; Freeman on Judgments, Secs. 523–531; 1 Herman's Estoppel, 519, 526; *Secombe* v. *Railroad Co.*, 23 Wall. 109, 119; *McKean* v. *Taite*, 1 Overton 199; *Beard* v. *Federy*, 3 Wall. 489; *Alviso* v. *United States*, 8 Wall. 342; *People* v. *Collins*, 19 Wend. 56, 58.)

IV. This action is barred by the statute of limitations and by acquiescence. The statute of limitations runs against counties. Section 3649 of the Gen. Stat. of Nev. makes the statute of limitations apply to the state and abolishes the maxim: *Nullum tempus occurrit regi.* Independent of the statute the maxim does not apply to counties and municipal corporations. (Wood's Lim. of Actions, Sec. 53; *St. Charles Co.* v. *Powell*, 22 Mo. 525; *Evan* v. *Erie Co.*, 66 Pa. St. 222; *Baker* v. *Johnson Co.*, 33 Ia. 151; *Huston* v. *Travis Co.*, 62 Tex. 16; *Ouchita Co.* v. *Tufts*, 43 Ark. 136.) The statute of limitations applies to boundary lines. (*Cooper* v. *Vierra*, 59 Cal. 282; *Reed* v. *Farr*, 35 N. Y. 116.)

V. By its acquiescence for the period equal to that fixed by the statute of limitations for gaining title by adverse possession, *i. e.* five years, Eureka county is forever estopped from questioning these boundary lines. (2 Herman's Estoppel, pp. 1266, 1274, 1276; 1 Dillon's Mun. Corp. Sec. 184, *n.*; *Rockwell* v. *Adams*, 6 Wend. 468; *Baldwin* v. *Brown*, 16 N. Y. 359; *Hunt* v. *Johnson*, 19 N. Y. 279; *Reed* v. *Farr*, 35 N. Y. 113–116; *Sneed* v. *Osborn*, 25 Cal. 619; *Columbet* v. *Pacheco*, 48 Cal. 395; *Biggins* v. *Champlin*, 59 Cal. 113; *White* v. *Spreckles*, 75 Cal. 610; *Burris* v. *Fitch*, 76 Cal. 395; *Edward Co.* v. *White Co.*, 85 Ill. 390–401; *Rhode Island* v. *Mass.*, 4 How. 591; *Missouri* v. *Iowa*, 7 How. 660; *Gillespie* v. *Cunningham*, 2 Humph. 19; *State* v. *Glenn*, 18 Nev. 44; *People* v. *Farnham*, 35 Ill. 562; *Brown* v. *Leete*, 6 Saw. 332.)

VI. Edward's survey can in nowise be impeached by the later surveys of Monroe and Reed. (Tyler's Boundaries, 334; *McKean* v. *Taite*, 1 Overt. 199; *Polk* v. *Gentry*, 1 Overt. 269; *United States* v. *Hanson*, 16 Pet. 196; *Improvement Co.* v. *Munson*, 14 Wall. 442; *Lessee* v. *Smith*, 1 Yerg. 496; *Lewen* v. *Smith*, 7 Port. 428; *Norris* v. *Hamilton*, 7 Watt. 91; *Bonney* v. *McLeod*, 38 Miss. 393; *Stanford* v. *Taylor*, 18 How. 409; *Jenkins* v.

*Trager*, 40 Fed. 729.)    The survey of Read is entirely out of the question.    He acted under no authority.    It was a private survey, and a private survey can in no way be of any efficacy as against a public survey by an authorized surveyor.    (Tyler's Boundaries, pp. 286, 311, 313, 315; *United States* v. *Hanson*, 16 Pet. 197; *Rose* v. *Davis*, 11 Cal. 133.)

*Baker & Wines*, for Respondent.

I.    This form of action, being for money had and received, can always be maintained in cases where one party or person has received money, which in equity, law, or good conscience ought to have been paid to, received by, or belongs to another.    (Pomeroy's Remedies, 2 Ed.  Sec. 544; *Freer* v. *Denton*, 61 N. Y. 492, 495; *White Pine Co. Bank* v. *Sadler*, 19 Nev. 98; *Mason* v. *Whaite*, 17 Mass. 563; *Cansidirre* v. *Beers*, 2 Keyes 200; *Newman* v. *Supervisors*, 45 N. Y. 676; *Kreulz* v. *Livingston*, 15 Cal. 346; *Wells* v. *Am. Express Co.*, 49 Wis. 229; *Eagle Bank* v. *Smith*, 5 Conn. 75; *Tutt* v. *Ide*, 3 Blatchf. 249.)

II.    The court below finds, "beyond question," that the property of Wenban, upon which the tax in controversy was levied, is in Eureka county, and as this was a mooted question upon the trial, with evidence pro and con., the findings of the court in that respect are therefore conclusive upon appeal. (*Smith* v. *Mayberry*, 13 Nev. 427; *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 107; *Duquette* v. *Ouilmette*, 13 Nev. 499; *Treadway* v. *Wilder*, 9 Nev. 67.)

III.    Edwards, who was at the time the county surveyor of Eureka county, was a public officer, and could not bind his county by making an erroneous survey, whether he made the error by mistake or design.    (*Rossire* v. *City of Boston*, 4 Allen 57; *Farish* v. *Coon*, 40 Cal. 35; *Board of Sup.* v. *Ellis*, 59 N. Y. 620; Bigelow on Estoppel, pp. 586, 587; *Hunter* v. *United States*, 5 Pet. 181.)

IV.    There can be no estoppel founded upon ignorance of the true state of facts.    Knowledge of the true state of facts must be shown to be possessed by the party claimed to be bound or estoppel cannot be sustained.    (*Brewer* v. *Boston & W. R. R. Co.*, 5 Metcalf 478; Bigelow on Estoppel, 523, 524; *Spring* v. *Huston*, 52 Cal. 442; *Chapman* v. *Crooks*, 41 Mich. 595; *Thayer* v. *Bacon*, 3 Allen 163.)

V.　The statute of limitations does not apply to the facts in this case.　This action was brought within ninety days after the receipt and appropriation of the money by the defendant.

By the Court, BELKNAP, C. J.:

Mr. Wenban, the owner of real estate lying near the boundary line of Eureka and Lander counties, and assessed by each county as within its jurisdiction, paid his taxes to Lander county, under the law authorizing a taxpayer to pay either county.　(Gen. Stat. Sec. 1205.)　The county of Eureka, claiming that the assessed property is within its boundaries, brought this action to recover back the amount of money paid.

The statute creating the county of Eureka describes the boundary line between Eureka and Lander counties as follows: " Beginning at a point on the north boundary line of Lander county, equi-distant between the northeast and northwest corners of said Lander county; thence running due south from said initial point to the south boundary line of said Lander county."　Eureka county was required to establish this line at its own expense.　(Stat. 1873, p 107.)　The line was accordingly established by Mr. Edwards, the county surveyor of Eureka county.　His survey placed the disputed territory in Lander county.

At the time of the passage of the law creating Eureka county the north line of Lander county and its northeast and northwest corners had been established.　As the position of the northwest corner is the principal matter of contention upon this appeal, the manner in which it was established may be stated. The statute creating Lander county designates the fortieth meridian as its western boundary.　(Stat. 1862, p. 53.)　The meridian is also the eastern boundary of Humboldt county.　In the year 1870 the position of this boundary line was established by a joint survey of the county surveyors of the respective counties, made at the instance of the county commissioners, in pursuance of a statute requiring the establishment of boundary lines between counties by their surveyors whenever the positions of such lines are disputed by reason of the settlement of persons or ownership of property thereon.　(Stat. 1866, p. 130.) Subsequently the northwest corner of Lander county was established by the county surveyors of Humboldt and Lander coun-

ties.   The point was accepted by the county surveyor of Elko county, and the south boundary line of that county, which is the north line of Lander county, commences at this corner.

·This line and corner were established in order that certainty could be attained in questions touching the territorial extent of the jurisdiction of courts, of the right of taxation, and other matters of a public nature; and, having been established for the information and guidance of public officers and private citizens, their position was matter of public knowledge.   When the legislature created the county of Eureka from the territory embraced within Lander county, and referred to the line and corners mentioned, it must be presumed to have acted with knowledge of these public facts.   There was in fact no other north line or northwest corner of Lander county, nor was provision made for the ascertainment of any other.   The position of the line and corner was matter of interest to the counties of Elko, Humboldt and Lander, as well as Eureka, and, if the legislature had intended any other, provision would probably have been made for a joint survey by the counties interested.   But at this time no one had questioned the correctness of their position.

Another act, framed at the same session, illustrates the understanding of the members of the legislature upon this subject. The act is entitled " An act to define and establish the boundary line between Humboldt and Lander counties," (Stat. 1873, p. 189,) and describes the portion of the line under consideration as follows:` " Beginning at the northwest corner of Lander county, and running due south on the present line between Humboldt and Lander counties to a point due north of Battle Mountain station.   *   *   *"   The " present line " here mentioned was that made by the joint survey of 1870, because down to the time of the passage of this law no other line had been run, and the " northwest corner " could have been no other than that made by the intersection of the southerly boundary line of Elko county with the Humboldt-Lander line in the year 1871.

In the year 1887 it was discovered that the Humboldt-Lander line as fixed by the joint survey of 1870, was not at the fortieth meridian, but was one and a half miles east of it; and it results that if the north line of Lander county were extended westward so as to intersect the meridian, and the equi-distant point mentioned by the statute taken upon such extended line, the

disputed territory would fall in Eureka county. But the error in the survey was not known until long after the enactment of the law creating Eureka county, and has no bearing upon the question of the intention of the legislature. The intention must be ascertained from the facts existing at the time of the passage of the law, and not from facts arising afterwards. At the time the law was framed the impression was that the position of the line and corner had been correctly ascertained, and they were, therefore, adopted by the legislature as fixed objects. from which the Eureka line could be established.

The judgment of the district court in favor of Eureka county is reversed, and the cause remanded.